No. 3637

Second Circuit

(Second Division)

——

## UNITED STATES CUTLERY CO. v. HAWKINS

——

(July 16, 1931. Opinion and Decree.)

——

William H. Cook and L. A. Newsom, of Shreveport, attorneys for plaintiff, appellee.

Robert L. Garrett, of Shreveport, attorney for defendant, appellant.

TALIAFERRO, J. Plaintiff sued defendant (doing business as Shreveport Show Case and Fixture Store) for $111.08, being the price of certain cutlery ordered by him, through plaintiff's representative, on January 24, 1928, and shipped by railway to him March 9th following. The cutlery consisted of four gross of steak knives, the cost price of which was $108, and four kitchen sets, the cost price of which was $3.08. These goods were sold on following terms: 2 per cent 10 days; 30 days net, which means that defendant had 30 days to make payment without any discount. Duplicate of the invoice of said goods was attached to and made part of the petition.

Defendant admits ordering and receiving the goods described in the petition but avers that same were found to be defective and inferior and that plaintiff was so notified; that plaintiff agreed to accept return of the steak knives and credit defendant with the price of same, and in keeping with this agreement defendant, on June 2, 1928, shipped these knives back to plaintiff and should have been credited with the price thereof, $108, which would leave $3.08 balance due on the account; that this balance had been offered and tendered to plaintiff, which was refused, and the amount was then tendered in open court.

Defendant prays that plaintiff's demand be rejected at its cost.

Plaintiff recovered judgment for the amount sued for and defendant prosecutes this appeal.

On May 12th, following arrival of goods above described, defendant wrote a letter to plaintiff in words as follows:

"In regard to the order of steak knives you sent us, will say we would like to return them to you as business is very quiet here and we are not selling them and at present we cannot pay for them. So we like to return them to. Let us hear from you about the matter."

This letter was received by plaintiff May 15th and on the following day was answered. In its reply plaintiff stated that the order for the goods was given their representative on January 24th, was received January 28th, and shipment made March 9th. These facts, the letter states, were mentioned because if defendant knew that he would be hard pressed to pay the account when it fell due he should have given plaintiff notice to that effect before shipment was made, as he had over 30 days time, and the order would have been canceled. In conclusion, plaintiff, in this letter of reply to defendant, says:

"However, in a partial effort to meet your views, we will allow you to return the stainless steak knives only, not the kitchen sets of which four were sent you, as the boxes would only be broken and the goods damaged by the time they would be received and the costs of these sets is not large, providing you prepay the transportation charges and the cartage both ways and pay for the sets that you must retain.

"If this proposition meets with your approval, kindly let us know by return mail the quantity of each of the steak knives you are returning and we will credit your account for the amount received."

The situation thus remained until on June 5th plaintiff wrote defendant enclosing statement of his account of $111.08, calling his attention to the fact that it was 90 days past due, and requesting payment in full. Defendant does not admit receiving this letter. It should have

reached him in about three days. On June 8th the box containing the steak knives, return of which plaintiff conditionally agreed to accept, was delivered to the railroad at Shreveport, consigned to plaintiff at Belleville, New Jersey. The bill of lading showing shipment of these knives is dated June 2nd but the railway's receipt, stamped on it bears date June 8th. The evidence is not conclusive on the point but the circumstances strongly indicate that plaintiff's letter of June 5th motivated the shipment of these knives on June 8th.

. Defendant, while testifying on direct-examination, stated he answered plaintiff's letter of May 16th accepting the proposals therein made, but on cross-examination admitted that he made answer thereto by returning the goods. We are inclined to accept this latter evidence as correctly reflecting defendant's attitude in this connection. He admitted to plaintiff's attorney he did not answer this letter of May 16th. He avers in his answer, verified by himself, that he notified plaintiff of the defects in the steak knives, but testified as a witness that he mentioned the matter to plaintiff's representative only. In his letter of May 12th to plaintiff no reference is made to the knives being inferior or defective. He wanted to return them because business was not good and he could not pay for them.

Plaintiff's position is that as defendant did not accept promptly and comply with the conditions of its proposal contained in its letter of May 16th it had the right to withdraw the offer at will, and, in fact, by its letter of June 5th demanding payment of the entire account of $111.08 did, tacitly, if not expressly, withdraw the proposition.

Defendant argues that he accepted plaintiff's offer of May 16th by writing him to that effect and followed this up by returning the goods on June 2nd, but he does not contend that one part of plaintiff's offer was complied with, to-wit: The payment of the balance on account of $3.08, if credit had been given for the invoice price of the steak knives. Payment of this amount was only offered to plaintiff's attorney immediately before this suit was filed in November, 1928.

At the time defendant initiated the move to have plaintiff assent to the return of the steak knives and give him credit for price of same, he was unconditionally bound for its payment. We do not think him serious in the defense passively asserted to the effect that these knives were defective and inferior. If plaintiff cared to relieve defendant's hard-pressed condition to any extent it certainly had the right to prescribe the terms and the conditions upon which such relief would be given, so far as its account against him was concerned. The letter of May 16th lays down the terms, in part clear and in part ambiguous, which defendant was required to meet in order that he would be relieved from payment of the price of these knives. Under the circumstances it required a strict compliance on part of defendant with the terms imposed upon him by plaintiff if he would exact specific performance by plaintiff. We do not think he did this.

We think a reasonable construction of the second paragraph of the quoted portion of plaintiff's letter to defendant of May 16th is this: That defendant should advise plaintiff by return of mail if he accepted the proposal of the letter, and follow such acceptance by immediate shipment of the knives, without cost or expense to plaintiff, and by payment of the

$3.08, balance due on the account. Why should plaintiff insist on being advised by return mail if its proposition was accepted unless it expected the goods to be returned as promptly? The acceptance of the proposition by formal letter did not mean much to plaintiff unless the goods were immediately returned. Plaintiff desired to know "by return of mail the quantity of each of the steak knives you are returning." Not the quantity of·knives you will return, or you expect to return, but the quantity "you are returning," which, according to what we deem a reasonable construction, means being returned contemporaneously with the writing and mailing of the letter advising of the shipment of the goods. Defendant did not do this, even should it be held that he immediately wrote plaintiff accepting its terms for the return of the knives.

Our conclusion is that on June 5th plaintiff had heard nothing from defendant with regard to the return of the knives, since writing him May 16th, and, therefore, withdrew its offer to accept return of the knives, and the matter reverted to the original relation between the parties.

We quote the following from 6 R. C. L., page 610, bearing upon the above discussed issue:

"In transactions between persons who are at a distance from each other it is customary not only to communicate offers by mail, but to accept them in the same manner" * * * "where an individual makes an offer by post, stipulating for, or by the nature of the business having the right to expect, an answer by return of post, the offer can endure only for a limited time, and the making of it is accompanied by an implied stipulation that the answer shall be sent by return of post. If that implied stipulation is not satisfied, the person making the offer is released from it." Maclay .v. Harvey, 90 Ill. 525, 32 Am. Rep. 35.

And the following from C. J., vol. 13, page 280:

"Where the offer, specifies a time of acceptance, an acceptance after that time will be nugatory as an acceptance, unless the offerer assents thereto, with full knowledge that it was not made within the period named. An offer which calls for a reply 'by return mail,' 'in course of post', or the like must be accepted by mailing an answer either by the next mail after it is received or during the same day that the offer is received." Waterman v. Banks, 144 U. S. 394, 12 S. Ct. 646, 36 L. Ed. 479; Carr v. Duval, 14 Pet. ·77, 10 L. Ed. 361.

On page 297 the author further says:

"An offer comes to an end at the expiration of the time given for its acceptance—a limitation of the time within which an offer is to run being equivalent to the withdrawal of the offer at the end of the time named."

Judgment affirmed.